IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MARITA B.,[1]

                Plaintiff,                          Case No. 3:18-cv-02162-YY

     v.

                                            OPINION AND ORDER

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.


YOU, Magistrate Judge:

Plaintiff Marita B. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying her applications for Disability Insurance Benefits

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the initial of her last name and does the same for other individuals whose identification could affect plaintiff's privacy.

("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and

Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.

This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C.

§§ 405(g) and 1383(g)(3). For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED for payment of benefits.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 23, 2015, alleging a disability onset

date of November 15, 2014. Tr. 13, 77-80. Her date last insured was September 30, 2019. *Id.*

The Commissioner denied plaintiff's applications for benefits initially and on reconsideration.

*Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred

on December 12, 2017. Tr. 33-54. After hearing testimony from plaintiff and a vocational

expert, ALJ Steve Lynch issued a February 5, 2018 decision finding plaintiff not disabled within

the meaning of the Act. Tr. 13-25. The Appeals Council denied plaintiff's request for review on

October 25, 2018, making the ALJ's decision the final decision of the Commissioner, subject to

review by this Court. Tr. 1-3; 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence

that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a

specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir.

2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not

substitute its judgment for that of the Commissioner when the evidence can reasonably support

either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date, November 15, 2014. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: obesity, fibromyalgia, asthma, thoracic degenerative disc disease, depression, anxiety, and attention deficit hyperactivity disorder ("ADHD"). Tr. 16.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b), but was limited to occasional climbing, stooping, crouching,

kneeling, and crawling, and must "avoid strong vibration and concentrated exposure to noxious fumes and odors . . . [and] can perform entry-level work consistent with SVP[2] 2." Tr. 18.

At step four, the ALJ found plaintiff was unable to perform her past relevant work. Tr. 24.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, including cashier, office helper, and mail clerk. Tr. 25. Thus, the ALJ concluded plaintiff was not disabled at any time from the alleged onset date through February 5, 2018, the date of the ALJ's decision. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erroneously rejected her subjective symptom testimony, the medical opinion evidence, and the lay witness testimony of her husband and daughter.

## I.     Subjective Symptom Testimony

### A.     Function Report

Plaintiff completed a function report on February 6, 2015. Tr. 247-54. She asserted that, due to excruciating chronic back pain, she cannot stand for longer than ten minutes or sit for more than a half hour at a time. Tr. 247. She also noted that the stiffness, numbness, and pain throughout her body was "more often than not unbearable." *Id.* She felt that she could not lift, bend, or carry. *Id.* Plaintiff further stated that she has "episodes of total mental breakdowns and anxiety attacks," which keep her from venturing into public spaces. *Id.* She also indicated that side effects from her pain medications limit her ability to perform her caregiving work, because

---

[2] Specific Vocational Preparation. Dictionary of Occupational Titles, Appendix C (4th Ed. Rev. 1991); 20 C.F.R. § 404.1568(a).

she has difficulty driving clients and grocery shopping for them.  *Id.*  On the other hand, plaintiff described driving her 17-year-old daughter to appointments and that she is able to grocery shop for her daughter.  Tr. 248.  Nonetheless, plaintiff explained that while she provides some care for her pet dogs, her daughter assists with most tasks, including picking up after the dogs.  *Id.*

Plaintiff indicated that she can no longer walk freely without assistive devices, that she cannot stand without leaning on something, exercise, join her daughter on trips to the mall, or attend family gatherings.  *Id.*  She described requiring assistive rails for toileting and bathing. Tr. 249.  She can prepare simple meals that take less than ten minutes.  She can perform chores around the house such as laundry and cleaning, but such tasks are not performed daily and require her to take several breaks before completion.  Tr. 250.  She can no longer ride a bike.  *Id.* Plaintiff prefers not to leave her home and avoids contact with others, even her friends.  Tr. 253. She indicated that most of her medications cause her to feel drowsy.  *Id.*  She expressed that the quality of her life has diminished in recent years, as her combination of back pain and fibromyalgia "pose different physical challenges" every day.  *Id.*  She is depressed by her diminished activity levels.  *Id.*

### B.    Hearing Testimony

At her December 2017 hearing, plaintiff testified that she lived in Molalla, Oregon, with her husband, who has special needs related to mental disorders.  Tr. 43.  She explained that she recently completed online courses to earn a master's degree in criminal justice.  Tr. 35.  Plaintiff indicated that she had not sought work in the criminal justice field since earning her degree because of "emotional stuff going on" and due to her chronic back pain.  Tr. 36.  Plaintiff described that she worked as a part-time caregiver for a stroke patient, an in-home assignment that required roughly 12 hours per week.  Tr. 38.  Plaintiff testified that her duties included

providing medicine, preparing food, and light cleaning.  *Id.*  She explained that she is assisted in her work by her daughter.  *Id.*  Plaintiff further explained that she did not think she could work more than 12 hours per week because she already spends two hours per day, in increments of 30 to 40 minutes, laying down while at work to alleviate pain.  Tr. 45-46.  Plaintiff also mentioned that when she is not feeling well, she calls in sick to work.  *Id.*

In addition to the chronic back pain mentioned above, plaintiff asserted that she is impaired by depression and anxiety, which has affected her for most of her life, and was then being treated by a psychologist.  Tr. 40-41.  Plaintiff underwent breast reduction surgery in 2016 in hopes of relieving low back pain.  Tr. 41, 727-28.  Plaintiff further described suffering from symptoms of ADHD, for which she was prescribed Ritalin.  Tr. 42.  Plaintiff stated that she had seen a back specialist who told her that she was not a good candidate for spinal surgery.  Tr. 44.  Plaintiff further explained that she has thoracic spinal pain in addition to her lumbar pain, which she attributed to three serious motor vehicle accidents.  *Id.*

Plaintiff indicated that she has difficulty sleeping at night, and often does not fall asleep until 7:00 am and wakes at 1:00 pm.  Tr. 47.  Although her pain medication provides some relief, plaintiff stated that adverse side effects of her medication include fatigue.  *Id.*  Likewise, plaintiff described that her anti-anxiety medication is somewhat helpful, as it calms her down to the point where she feels she can breathe.  Tr. 48.  Plaintiff indicated she did not like to perform activities outside of her home, including grocery shopping.  *Id.*

C.       **Relevant Law**

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminated the reference to "credibility," clarified that "subjective symptom evaluation is not an examination of an individual's character," and required the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Because plaintiff's filed her applications for disability prior to the enactment of SSR 16-3p, it is not applicable to this case. *Id.* at *1.

### D. Analysis

#### 1. Daily Activities

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 18. However, the ALJ ultimately concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* Generally, an ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ first found plaintiff's symptom allegations were inconsistent with her reported work activities. Tr. 19. The ALJ explained that although plaintiff alleged she could no longer perform full-time work as of November 2014,[3] no contemporaneous records reflected worsening

---

[3] Although the ALJ indicated that the date was November 2013, it is clear from the context of the record the ALJ intended to state "November 2014," the alleged onset date.

of physical or mental conditions. *Id.* The ALJ further found that plaintiff's earning records suggested she sometimes worked more than the 12 hours per week she testified to, and that because caregiving work is "relatively demanding physically and mentally," plaintiff's ability to perform the job part-time "implies she would be able to better sustain less physically demanding work." Tr. 22.

Arguing that the ALJ erred in finding no evidence of worsening in November 2014, plaintiff highlights positive imaging findings on a December 2012 thoracic MRI, lower limb weakness in January 2013, an abnormal nerve-conduction study in March 2013, an attempted referral for breast reduction surgery to address back pain in April 2013, and reports of back pain and edema in November 2014. Tr. 306, 317-18, 366, 395. Additionally, in April 2014, plaintiff complained of intermittent worsening of her back pain. Tr. 380. Thus, although the court agrees that there is little clear evidence of a traumatic physical incident around the time of the alleged onset date, the record nevertheless reflects consistent reports of back pain from the time of the 2012 thoracic spine MRI until November 2014, and beyond. *See, e.g.*, Tr. 476 ("f/u for chronic back pain" on November 4, 2014). Indeed, plaintiff was eventually referred to and received a breast reduction in 2016, in hopes of providing back pain relief. Tr. 468 (noting pain possibly related to breasts), 727-28 (chart note of reduction surgery).

Given the significant and consistent findings of back pain throughout the record, including the period leading up to the alleged onset date, it is not clear why the ALJ sought to impugn plaintiff's credibility because there was no discrete trauma that spurred her to choose the onset date at issue. Indeed, onset dates are often somewhat arbitrary in the context of chronic pain. Here, where in addition to thoracic degenerative disc disease, the ALJ found fibromyalgia and obesity to be severe impairments, the ALJ did not provide sufficient reasoning to discount

plaintiff's pain testimony simply because there was no record of a discrete injury or incident at the time of the alleged onset date. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) (because symptoms of fibromyalgia wax and wane, once the condition is diagnosed, the ALJ's analysis should consider the longitudinal record). The ALJ's rationale does not meet the specific-and-legitimate legal standard.

As noted, the ALJ further found that because caregiving work is mentally and physically taxing, plaintiff's ability to perform such work part-time suggested she had the ability to perform a less-challenging job on a full-time basis. Tr. 22. While the ALJ's reasoning carries a degree of facial appeal in its reductionism, it does not properly account for plaintiff's testimony, which the ALJ sought to undermine by the finding. Critically, plaintiff repeatedly explained that although she works 12 hours per week, her minimal work activity is interrupted by frequent breaks to address pain symptoms, during which time she sits or lies down for more than 30 minutes at a time. Tr. 45-46. Further, plaintiff explained that she was limited in her caretaking abilities and required assistance from her daughter to provide adequate care for her sole client. *Id.* Taking plaintiff's testimony as a whole, it is apparent that although she purports to work 12 hours each week, her work environment is unique to the extent it allows her to take long breaks after short bursts of work. Such a structure would not allow her to perform regular, full-time work. Because plaintiff's need for breaks stems from her need to address chronic pain (and likely side-effects of tiredness from her prescribed pain medications), her need for breaks is unlikely to be mediated by lighter work. The ALJ's finding is not specific-and-legitimate, when considering the record as a whole.

Similarly, the ALJ impugned plaintiff's testimony regarding her daily activities at home. The ALJ found that despite plaintiff indicating she requires help with housework, she could

complete such tasks if she took breaks and "rarely complained to healthcare providers of her pain symptoms interfering with her activities of daily living." Tr. 22. However, the ALJ's finding is unpersuasive in the context of the longitudinal record, which demonstrates consistent complaints of chronic back pain causing plaintiff to sit or lay down after completing minimal-exertion tasks, and consistent pain reports to her providers. Although she may not have explicitly reported that such pain affected her ability to perform specific daily activities, her consistent symptom allegations suggest she would be so limited. Moreover, plaintiff, in her function report, listed a number of regular activities that she was significantly impaired in performing, which were generally endorsed by at least two treating physicians. *See* Tr. 252 (listing impaired abilities), 888-91 (treating physician noting worse pain with activity and significant limitations in physical tasks), 897 (treating physician noting significant limitations in sitting, standing, and walking due to pain). Because the ALJ's finding is inconsistent with the longitudinal record, it was not supported by substantial evidence.

The ALJ also impugned plaintiff's testimony based on evidence that she earned a master's degree in criminal justice during the period at issue. Specifically, the ALJ found that "her ability to take classes suggest she was somewhat more active than would be expected given her allegations of disabling symptoms and limitations." Tr. 22. While such a finding might be valid if supported, the ALJ provided no evidence that taking online courses was inconsistent with her allegations. Indeed, in the setting of online coursework, it is reasonable to presume that plaintiff could work at a diminished pace, and, at least, take more breaks to address pain than would be allowed in a typical school or work setting. Most importantly, the ALJ failed to address what testimony was undermined by his finding. Accordingly, the finding was not supported by substantial evidence.

Similarly, the ALJ's conjecture that "plaintiff may have stopped working as part of a plan to change careers, and not due to her medical conditions" also lacks evidentiary support. First, the two alternatives are not mutually exclusive; it is just as likely that plaintiff sought to change careers in order to address her chronic pain issues, as a criminal justice career could provide employment less strenuous than that of a caretaker. Moreover, plaintiff's testimony that she stopped working due to chronic back pain is well-substantiated by her history of consistently seeking treatment, including surgery, to address her pain symptoms. As such, the ALJ's speculation as to plaintiff's motivations for taking courses is not a valid rationale to impugn her credibility, at least on this record.

### 2.    Objective Medical Evidence

The ALJ found that plaintiff's symptom allegations were inconsistent with the objective medical findings of record. For example, the ALJ found that although plaintiff's thoracic (mid-back) MRI "seems partially consistent" with her allegations, "a specialist who evaluated [her] in early 2013 did not think that the claimant's spine disorder was causing her pain symptoms and recommended a breast reduction." Tr. 19. It is uncertain how the ALJ arrived at his finding, as the record he cited noted plaintiff's symptoms were consistent with "obvious thoracic canal involvement" and "lumbar nerve root irritability." Tr. 327. Although the physician found plaintiff's lumbar MRI was normal, he noted that her lumbar nerve conduction studies were "abnormal and consistent with a conduction block of the right peroneal nerve," which he opined was consistent with her complaints of right leg symptoms. *Id.* Importantly, the physician who reviewed the thoracic MRI opined that plaintiff's thoracic joint changes were "responsible for her thoracic discomfort," which squarely contradicts the ALJ's finding. *Id.* Further, although the physician agreed that a breast reduction surgery might be helpful, he did not discount the

involvement of the degenerative changes in plaintiff's thoracic spine as the ALJ appears to have inferred. *Id.* Finally, the ALJ glossed over the fact that after plaintiff had breast reduction surgery in 2016, her back pain persisted, which suggests that breast size was not its primary cause. *See* Tr. 828 ("still has chronic back pain" six months post breast-reduction surgery).

The ALJ also noted that the "objective evidence of the claimant's spinal disorder is generally inconsistent with the extent of her alleged limitations from back pain." Tr. 19. The ALJ went on to characterize medical imaging findings: he noted that an MRI of the thoracic spine showed mild degenerative changes without significant canal or foraminal narrowing, and that an MRI of the lumbar spine "did not show a progression in her spinal disorder that would explain her allegations." *Id.* Regarding the thoracic spine, however, the physician who reviewed the MRI opined that the findings correlated with the alleged area of pain and confirmed thoracic spondylosis with cord compression. Tr. 305-06. To the extent the ALJ determined plaintiff's pain complaints were inconsistent based on the physician noting some "mild" findings, the rationale is invalid, as the SSA acknowledges that pain is subjective. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Potter v. Comm'r of Soc. Sec.*, 571 F. App'x 569, 571 (9th Cir. 2014) (ALJ may not require objective evidence for pain symptoms, particularly in the context of fibromyalgia) (citing *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

The ALJ further noted that most of plaintiff's physical examinations "showed a normal range of motion and normal strength in her extremities . . . was rarely observed by healthcare providers to have any significant problems with ambulation . . . [and] was rarely observed to be in any distress from her back pain symptoms." Tr. 19-20. There are problems with each of these rationales on this record. First, the ALJ determined that plaintiff has the severe impairment of fibromyalgia, which involves "chronic pain throughout the body." *Revels*, 874 F.3d at 663

(quoting *Benecke*, 379 F.3d at 590).  As the Ninth Circuit explained in *Revels*, it may be error for an ALJ to rely on clinical visits where a fibromyalgia patient does not demonstrate abnormal examination findings: "a person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal."  *Revels*, 874 F.3d at 663 (citation and internal brackets omitted).

To the extent the ALJ found the objective testing inconsistent with plaintiff's pain allegations, the rationale was not valid.  As discussed, an ALJ errs by rejecting a claimant's pain testimony solely because it is not plainly supported by objective evidence.  But plaintiff's diagnoses were confirmed by medical imaging, which showed multiple abnormalities in her spine, at more than one level.  Tr. 318-19, 326-27.  Moreover, despite the ALJ's finding, plaintiff presented more than once with pain that was not adequately managed by her medications, so her physicians provided injections of Toradol.[4]  Tr. 554, 560, 828, 842, 863.  Indeed, the ALJ noted that plaintiff required injections for "intermittent exacerbations," which undermines the ALJ's own rationale that she was not observed to be in distress from pain.  Finally, based on the ALJ's finding that plaintiff's pain was not as severe as alleged, the ALJ determined that plaintiff could sustain light work.  That finding, however, failed to address plaintiff's consistent testimony and reports throughout the record that she requires extra breaks to sit or lie down to alleviate her pain.

In all, the ALJ's rationales for rejecting plaintiff's symptom testimony based on a lack of objective findings do not meet the clear-and-convincing legal standard.

### 3. Treatment Issues

In discrediting her pain testimony, the ALJ made a number of findings regarding aspects of plaintiff's treatment.  For one, the ALJ found that plaintiff's pain symptoms "were managed

---

[4] Further, plaintiff explained that the injections are effective for only three days.  Tr. 842.

with oxycodone since at least late 2014." Tr. 20. To the extent the ALJ's finding implies that plaintiff's pain was well-controlled by that medication, the Toradol shots described above undermine the ALJ's finding. The ALJ also found that "pain medication improved her symptoms," and that "[f]ew adjustments were made during the period at issue in this decision." Tr. 20. Again, while the ALJ acknowledged that plaintiff "received Toradol injections on an intermittent basis," *id.*, his finding is undermined by her need for them. Further, although plaintiff indicated that oxycodone "works for" her chronic back pain on the date the ALJ cited, plaintiff requested and was provided a Toradol injection for excess pain at the same clinical visit. Tr. 828-29. Furthermore, the great bulk of the evidence reflects that plaintiff's pain was not relieved by her medications, as her complaints are frequent and generally consistent across the longitudinal record. The situation is not wholly surprising in the context of fibromyalgia, as symptoms commonly wax and wane. *See* SSR 12-2p at *6, *available at* 2012 WL 3104869 (July 25, 2012); *see* Tr. 849 (significantly worsening pain in April 2017), 856 (significantly worsened symptoms in July 2017). Indeed, plaintiff sought and underwent breast reduction surgery in hopes of relieving her back pain despite her prescription painkillers, which contradicts the ALJ's finding that conservative treatment was effective.

The ALJ additionally noted that plaintiff's testimony that she required a walker was unpersuasive because she was not observed to have a walker and "she did not have any significant or persistent difficulty with walking." Tr. 20. Contrary to the ALJ's finding, however, plaintiff's treating physicians both noted that she used a walker. Tr. 863 (plaintiff "needs to use a walker"), 897 (plaintiff must use cane or walker), 906 (noting plaintiff uses a walker for walking on nearby track), 1002 (plaintiff presents with walker that she uses outside of home).

For all the reasons explained above, the ALJ did not provide legally sufficient reasons to discount plaintiff's pain testimony.

## II.     Medical Opinion Evidence

### A.     Relevant Law

The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle*, 533 F.3d at 1164. The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. § 404.1527.[5] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. § 404.1527(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1040.

### B.     Dr. Salazar

Treating physician Arturo Salazar, M.D., provided a medical opinion on November 13, 2017. Dr. Salazar doctor reported that he had treated plaintiff every three months since 2012.

---

[5] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. § 404.1527.

Tr. 887.  He indicated that plaintiff's diagnoses included depression, fibromyalgia, hyperthyroidism, and chronic back pain.  *Id.*  He recorded pain with movement and palpation over all levels of plaintiff's spine.  *Id.*  The doctor indicated that plaintiff had diffuse pain that was the worst in her back, as well as "difficult to control" anxiety.  *Id.*  He felt plaintiff would experience substantial difficulty with stamina, pain, or fatigue if she were to work full-time at a sedentary or light-level job, would need to work at a reduced work pace, and that such work would exacerbate her symptoms.  Tr. 887-88.

Thus, Dr. Salazar opined plaintiff was incapable of performing even a low-stress job. Tr. 888.  The doctor further opined that plaintiff would need to change her posture more than once every two hours, could stand or walk less than two hours per day, and could sit for about six hours per day.  Tr. 889.  He noted restrictions in lifting and carrying, twisting, climbing stairs, and climbing ladders.  Tr. 890.  Finally, Dr. Salazar opined plaintiff had limitations with movement and coordination, and anticipated her impairments would cause her to miss work three times per month.  Tr. 891.

### C.    Dr. Davies

Laura Davies, M.D., completed a fibromyalgia assessment form on November 15, 2017. She indicated that she first treated plaintiff in rheumatology one year prior.  Tr. 894.  She rated plaintiff's chronic pain and paresthesia as "severe."  Tr. 895.  Dr. Davies indicated plaintiff demonstrated the following medical signs: spasm, chronic fatigue, tenderness, crepitus, and impaired sleep and appetite.  *Id.*  She indicated plaintiff would miss more than four workdays per month.  *Id.*  The doctor further indicated plaintiff could walk less than one block without stopping to rest, and could sit and stand or walk for less then two hours per day, as she was required to shift positions every five to ten minutes for five to ten minutes.  Tr. 898.  She noted

that plaintiff used a cane or a walker. Dr. Davies additionally noted plaintiff would need to lie down throughout the day. *Id.* Finally, Dr. Davies opined that plaintiff could not tolerate even low-stress work. Tr. 899.

### D. Analysis

The ALJ accorded little weight to the medical opinions of Drs. Salazar and Davies because "[b]oth opinions offered little explanation for the reported limitations other than reciting the claimant's medical conditions." Tr. 23. Further, the ALJ described that the opinions were inconsistent with the medical imaging of plaintiff's spinal disorder, the clinical signs of the disorder, examination results regarding range of motion, "and evidence of stable pain symptoms with pain management." *Id.* The ALJ concluded by noting the medical opinions were "somewhat inconsistent with some of claimant's activities of daily living," including caretaking work, schooling, doing housework, and caring for pets. *Id.*

An ALJ may reject a physician's opinion that is brief and inadequately supported by clinical findings. *See, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Here, however, the ALJ's finding was inconsistent with the record before him. First, as described above, Drs. Salazar and Davies completed detailed function assessments. Tr. 887-91, 894-97. Both doctors detailed plaintiff's diagnoses, clinical findings, and opined on several discrete issues related to plaintiff's ability to perform gainful work. *Id.* Although the doctors repeatedly noted plaintiff's diffuse pain and pain specific to her back, those observations were appropriate in the context of spinal impairments and fibromyalgia. Indeed, the doctors' descriptions of plaintiff's pain symptoms were generally consistent, as they indicated plaintiff had difficulty sitting and standing or walking for extended periods of time without changing positions due to her impairments. Tr. 889, 897. Both doctors indicated plaintiff required

unscheduled breaks more than once per hour to relieve discomfort. *Id.* Both doctors opined that plaintiff would miss more than two workdays per month due to her impairments. Tr. 891, 896. Both doctors also noted that plaintiff was additionally limited by mental impairments, and would be unable to tolerate the demands of even low-stress work. Tr. 888, 899. As such, the ALJ's initial finding regarding the doctors' opinions does not meet the specific-and-legitimate legal standard.

For the same reasons it was erroneous for the ALJ to discount plaintiff's credibility based on plaintiff's clinical examinations of strength, range of motion, and gait, it was also error to reject the doctors' opinions on that basis in the context of fibromyalgia. Similarly, to the extent the doctors' opinions were rejected because plaintiff's pain complaints suggested stability, the finding is undermined by plaintiff's repeated need for Toradol injections to address exacerbations, as well as the fact that plaintiff underwent surgery in hopes of relieving her chronic pain. Although Dr. Salazar did not specifically note that plaintiff had problems with her gait, he repeatedly mentioned that plaintiff's pain is worse with movement or activity. *See* Tr. 887-89. Dr. Davies was more specific, noting that plaintiff uses an assistive device for walking and cannot ambulate for more than a block without resting. Tr. 897. Also, both doctors acknowledged that plaintiff's depression and anxiety further affected plaintiff's pain. Tr. 887-88, 891, 895.

Dr. Salazar had been treating plaintiff for more than five years at the time he provided his November 2017 medical opinion. Such an extended treatment relationship generally entitles a treating physician's opinion to greater weight, so long as the opinion is well-supported by the physician's treatment notes. *Garrison*, 759 F.3d at 1013. Here, Dr. Salazar consistently reported

plaintiff's pain complaints over the course of her treatment. As such, the ALJ's conclusion regarding plaintiff's symptomatology is inconsistent with the longitudinal record.

The ALJ appears to have rejected Dr. Davies' opinion in part because although she began treating plaintiff in 2016, "for some reason [she] reported that her treatment began 'years ago.'" Tr. 23. Dr. Davies did not, however, indicate that *she* began treating plaintiff years ago; rather, she marked a box which stated that plaintiff's treatment for fibromyalgia began years ago. Tr. 894. It is clear that Dr. Davies was not misstating the treatment record because on the same page, the doctor wrote that her initial evaluation of plaintiff occurred on November 15, 2016, which is supported by the record. *See* Tr. 714-22. Further, Dr. Davies indicated that in addition to multiple positive objective signs, plaintiff's medical imaging studies corroborated the existence of her impairments. Tr. 896. Additionally, it does not appear that the ALJ properly considered that as a rheumatologist, Dr. Davies is a specialist in evaluating and treating fibromyalgia, and as such her medical opinion is entitled to greater weight. 20 C.F.R. §§ 404.1527(c), 416.927(c). Accordingly, the ALJ's finding as to Dr. Davies was erroneous.

The ALJ also found that the doctors' opinions were "somewhat inconsistent" with "some of claimant's activities of daily living"; however, that was not a valid rationale to discredit them. First, although plaintiff was forthright in explaining that she still performs some caregiving activities, the record consistently demonstrates that she only works a few hours per day, and even that minimal activity is punctuated by frequent unscheduled breaks and rest periods. Moreover, plaintiff credibly testified that she is assisted in her work by her teenage daughter. On this record, plaintiff's testimony is consistent with her levels of pain, the effect of her symptoms on her ability to perform work activity, and the opinion of her treating physicians. Similarly,

plaintiff explained that she has significant limitations in performing other activities, such as grocery shopping and feeding her pets, which the ALJ rejected for legally insufficient reasons.

Finally, the ALJ discounted the doctors' opinions because plaintiff was able to complete online college coursework during the period at issue. Tr. 23. It is unclear, however, how plaintiff's coursework contradicts the opinions of the doctors. Just as the doctors did, the ALJ acknowledged that plaintiff has a number of limiting mental health conditions, including depression, anxiety, and ADHD. Tr. 16. Further, to the extent the ALJ felt plaintiff's schooling suggested she was capable of more complex tasks than she alleged, the assumption is undermined by his own RFC determination, which limited plaintiff to entry-level jobs consistent with SVP 2. Tr. 18. As noted above, the treating physicians both opined that plaintiff's mental health issues exacerbate her pain symptoms, and significantly limit her ability to adapt to any work environment, even low-stress situations. Thus, viewing the record as a whole, the ALJ's rationales for rejecting the otherwise valid opinions of the treating physicians do not rise to the specific-and-legitimate standard, and disregard the deference such treating opinions are entitled to under the regulations. *See Garrison*, 759 F.3d at 1012 ("Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . .") (citation and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

## III.    Lay Witness Evidence

### A.    Testimony

The record in this case was supplemented by the lay testimony of two personal witnesses: plaintiff's husband and daughter. Plaintiff daughter completed a function report on May 7, 2015. Tr. 255-62, 293-94. Plaintiff's daughter noted that it is "hard for [plaintiff] to get around, she

cannot bend over or pick things up[] [and] she can't stand on her feet for too long[.]"  Tr. 255.

Plaintiff's daughter noted the plaintiff rests between daily activities, needs assistance in caring

for their pets, can prepare only simple meals, and is significantly limited in lifting, walking,

standing, and sitting.  Tr. 260.

Plaintiff's husband provided substantially similar testimony.  He confirmed that plaintiff

has difficulty sleeping due to pain and therefore does not wake up until later in the day.  Tr. 289.

He described that she has significant pain such that she is limited in her ability to both stand and

sit for extended periods.  *Id.*  He noted that her pain is best relieved by lying down throughout

the day.  *Id.*  He also noted that due to her anxiety, she prefers to stay in her home, and that her

depression has not improved in the two years that he has been with her.  *Id.*

### B.    Relevant Law

Lay-witness testimony regarding the severity of a claimant's symptoms or how an

impairment affects a claimant's ability to work is competent evidence that an ALJ must take into

account.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  To reject such testimony, an

ALJ must provide "reasons that are germane to each witness."  *Rounds v. Comm'r*, 807 F.3d 996,

1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114).  Further, the reasons provided must be

"specific."  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing

*Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)).  Where the ALJ has provided clear and

convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not

described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane

reasons for rejecting lay testimony is harmless.  *Molina*, 674 F.3d at 1121-22.

## C.     Analysis

The ALJ accorded limited weight to the lay testimony of plaintiff's daughter and husband. The ALJ found that their description of plaintiff's symptoms and limitations were inconsistent with the objective evidence, course of treatment, and response to treatment. Tr. 23. However, based on the analysis above, the ALJ failed to accurately evaluate the issues he invoked to discredit the lay witnesses. Generally, the testimony of the lay witnesses was consistent with plaintiff's own testimony regarding the limiting effects of her combination of impairments, and consistent with the opinions of the treating physicians that were erroneously rejected. Moreover, to the extent the ALJ discredit the lay witnesses because they are not "medical sources," the rationale is simply invalid. For these reasons, the court cannot find that the ALJ's rationales for rejecting the lay witness testimony was germane to them.

## IV.     Remand for Benefits

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020 (9th Cir. 2014) (citations omitted). Even if all of the requisites are met, however, the court may still remand for further

proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

For the reasons described herein, the ALJ erred in evaluating the credibility of plaintiff's symptom testimony, the medical opinions of two of her treating physicians, and consistent observations made by the lay witnesses. Accordingly, the first prong of the credit-as-true analysis is met. Defendant contends that the analysis can go no further, because "the statements of [p]laintiff, Drs. Davies and Salazar, and the lay witnesses conflicted with the treatment records." Def.'s Br. 11. However, as explained above, the pain complaints, physical and mental functional limitations, and testimony provided by plaintiff, her treating doctors, and her family are generally consistent with chronic pain that continues to plague plaintiff despite her extensive treatment record, including powerful pain medications, Toradol injections, and breast reduction surgery. Plaintiff, her doctors, and her family also indicated that plaintiff has severe anxiety and depression that further exacerbates her pain symptoms arising from fibromyalgia and multi-level spine conditions and interferes with her ability to associate with others. Finally, the allegation that plaintiff's impairments require her to work slowly, work for a very limited period of time, and need to take multiple breaks per day remain essentially uncontroverted on this record by those with the opportunity to observe her. Accordingly, and considering the overall consistency of the evidence rejected by the ALJ, the record on this matter is complete, which satisfies prong two of the analysis.

Therefore, the Court exercises its discretion to credit the improperly discredited testimony as true. Crediting the evidence as true, it is clear that plaintiff cannot sustain regular work on a consistent basis because she would require excessive breaks and could not adequately maintain attendance in a typical work environment. The VE testified that such limitations would

preclude any gainful employment.  Tr. 52-53.  Because plaintiff cannot perform her past relevant work or the jobs identified by the ALJ at step five of the sequential analysis, plaintiff is disabled within the meaning of the Act.

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED January 31, 2020.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge